# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HARVEY D. POTTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-16-379-SPS ) |
| COMMISSIONER of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Harvey D. Potter requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on August 10, 1971, and was forty-three years old at the time of the administrative hearing (Tr. 168, 177). He has a high school equivalent education and vocational training as an emergency medical technician, and has worked as a first aid attendant, paramedic/emergency medical technician, fast food cook, and building maintenance worker (Tr. 33, 218). The claimant alleges he has been unable to work since August 22, 2006, due to spinal nerve damage, partial right leg paralysis, a back injury, diabetes, nerve damage, and bipolar disorder (Tr. 168, 177, 217).

**Procedural History**

On May 21, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on May 22, 2012 (Tr. 168-78). His applications were denied. ALJ Jodi Levine held an administrative hearing and determined the claimant was not disabled in a written decision dated November 28, 2014 (Tr. 21-34). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant retained the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. § 416.967(b), and could understand, remember, and carry out simple and detailed instructions (Tr. 29). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a first aid attendant (Tr. 33-34).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) account for his moderate difficulty in maintaining concentration, persistence, or pace; (ii) consider his severe obesity and non-severe lumbar spondylosis and in formulating his RFC; and (iii) analyze the state agency psychologists' opinion as to his moderate limitation in the ability to maintain social functioning. The Court agrees that the ALJ erred in her analysis of the claimant's non-severe spondylosis at step four.

The ALJ determined that the claimant had the severe impairments of diabetes mellitus, obesity, and an affective disorder, as well as the non-severe impairment of spondylosis (Tr. 26). The relevant medical records reveal the claimant was incarcerated between 2006 and 2012. At a new intake physical examination on May 23, 2006, the claimant reported chronic low back pain from an injury he sustained in 1999 (Tr. 572). A lumbar spine x-ray taken that day revealed the possible presence of a pars defect at L5-S1, slight loss of alignment with slight subluxation of L5 on L4, and normal vertebrae height (Tr. 574). The claimant was treated for intermittent low back pain with non-prescription medications throughout his incarceration.

On June 20, 2006, the claimant requested the use of a cane due to low back pain, which was granted for ninety days, along with permission for a low tier bed (Tr. 588). On September 26, 2006, the claimant reported that his low back pain was not well-controlled

with his current medication (Tr. 600). A medication change was made, the claimant was granted permission to use a cane and have a low tier bed for an additional ninety days, and he was referred to physical therapy (Tr. 600). At a physical therapy evaluation on September 27, 2006, the claimant stated that his pain ranged from four at best to eight at worst on a ten-point scale (Tr. 603). An examination conducted by physical therapist D. Ayala revealed decreased lumbar flexion range of motion and pain with radiculopathy to the claimant's lower extremities (Tr. 603). The claimant's permission to use a cane and have a low tier bunk was renewed for six months on January 4, 2007 (Tr. 655). A lumbar spine MRI performed on February 7, 2007, reveled mild to moderate spondylosis in the lower lumbar spine with mild stenosis (Tr. 665). On June 23, 2008, Dr. Duckworth gave the claimant permanent permission to use a cane and have a low tier bed, as well as imposed permanent restrictions of no lifting more than ten pounds, and no prolonged sitting or standing (Tr. 807-08). On September 19, 2008, Dr. Duckworth diagnosed the claimant with lumbago (Tr. 818-19).

On May 28, 2010, the claimant reported an exacerbation of his low back pain with numbness in his legs (Tr. 926). On physical examination, tenderness and decreased range of motion were noted in his lumbar spine, and he had a guarded gait (Tr. 926). A lumbar spine x-ray taken June 11, 2010, revealed well aligned vertebrae and scattered, mild degenerative and hypertrophic changes (Tr. 931).

On August 19, 2010, the claimant reported that he fell on his back, and had severe back pain (Tr. 946). He had midline tenderness, and his back was warm to touch (Tr. 946). He was instructed to follow-up in the morning, and was provided a wheelchair for the

remainder of the day (Tr. 947). The next day, the claimant was still tender and had decreased range of active motion, but he had no muscle spasms, joint deformity, or malalignment (Tr. 949). The examining provider stated that the claimant did not show the symptoms of someone in severe pain (Tr. 949).

On April 28, 2011, the claimant reported another fall, and had severe low back pain that radiated to his right leg, which he stated was numb (Tr. 1078). He was transported to Texas Health Presbyterian Hospital for inpatient care (Tr. 1085-1100). A lumbar MRI taken the next day revealed bilateral L5 spondylosis and a grade 1 anterolisthesis at L5-S1; degenerative disc disease, a bulging of the annulus, and a small central disk protrusion at L5-S1, with moderate stenosis of the right neural foramen and mild stenosis of the left neural foramen; and a broad-based central disk protrusion resulting in a mild spinal stenosis at the L4-L5 level (Tr. 1098-99, 1299). These findings were noted as not significant, and Dr. McMahon believed that the claimant was malingering (Tr. 1101, 1103, 1107).

After his release from incarceration in 2012, the claimant's medical care generally consisted of treatment for diabetes and associated problems (Tr. 341-45, 350-495, 1219-35, 1237-43, 1246-55, 1259-64, 1338-45, 1354-65). However, the claimant presented to Integris Seminole Medical Center on May 4, 2014, after a fall and was diagnosed with, *inter alia*, a back contusion (Tr. 1236, 1244).

Dr. Peter Sanfelippo conducted a consultative physical examination of the claimant on June 29, 2012 (Tr. 304-08). He found full active range of motion, normal lordosis, no tenderness, and no muscle spasms in the claimant's lumbar spine (Tr. 306). He also found that the claimant's gait, tandem walking, and heel to toe walking were normal, and that his

straight leg raise tests were negative bilaterally (Tr. 306). Dr. Sanfelippo noted the claimant insisted on using a cane for the neurologic examination, but opined that he was able to ambulate and heel to toe walk without a cane (Tr. 306). A lumbar spine x-ray taken the same day revealed L5 spondylosis with anterolisthesis (Tr. 308). Dr. Sanfelippo opined that the claimant was able to do activities that involved sitting, standing, moving about, lifting, carrying, and handling objects (Tr. 306).

On August 14, 2012, state reviewing physician Dr. Manda Waldrep reviewed the record and determined that the claimant's L5 spondylosis was a non-severe impairment and referenced Dr. Sanfelippo's consultative examination as support (Tr. 1215). State reviewing physician Dr. James Metcalf reviewed the record on January 1, 2013, and found that there was no medical evidence showing that the claimant was disabled on June 30, 2007 (his date last insured), and that the claimant's allegations were non-severe (Tr. 1218). Dr. Metcalf also referenced Dr. Sanfelippo's consultative examination as support for his opinions (Tr. 1218).

At the administrative hearing, the claimant testified that he fractured his back in 1998 or 1999, and experiences constant pain, described as a "burning sensation," in his low back (Tr. 66). He stated that he has muscle spasms in his back once or twice per month, and that he relieves his back pain by lying down and by relaxing (Tr. 66-67). As to specific limitations, the claimant testified he could sit for thirty or forty-five minutes, stand for forty-five minutes or an hour, walk one-half of a block with a cane, walk forty-five or fifty feet without a cane, lift five or ten pounds, and could not squat or bend (Tr. 72-73).

In her written opinion at step two, the ALJ found that the claimant's spondylosis was non-severe because it did not, either singly, or in combination with his severe impairments, impose more than a minimal limitation in the ability to perform basic work activities (Tr. 26). In support of these findings at step two, the ALJ noted: (i) a February 2007 lumbar spine MRI revealed mild to moderate spondylosis with mild stenosis; (ii) an April 2011 lumbar spine MRI revealed bilateral L5 spondylosis, grade 1 anterolisthesis at L5-S1, moderate stenosis of the right neural foramen, mild stenosis of the left neural foramen, and a broad-based central disc protrusion resulting in mild spinal stenosis at the L4-5 level; (iii) a June 2012 x-ray revealed spondylosis; (iv) the claimant had a normal gait and normal straight leg raising on June 29, 2012; (v) he had normal range of motion, muscle strength, and stability in all extremities without pain on inspection; (vi) he testified that his back pain was the result of nerve damage from a fracture in 1998 or 1999; (vii) his pain appeared to be adequately managed with rest, relaxation, meloxicam, and gabapentin; and (viii) he does not participate in physical therapy, or require surgery to treat his back pain (Tr. 26). At step four, the ALJ summarized the state agency physicians' opinion that the claimant's spondylosis was non-severe, and found their opinion consistent with the medical evidence available to them, as well as the more recent medical records (Tr. 33). The ALJ made no further findings related to the claimant's spondylosis at step four (32-33).

The claimant alleges error with regard to his non-severe back impairment. Because the ALJ found that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two would ordinarily be considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments

and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless. Although the ALJ discussed the claimant's spondylosis at step two, and summarized the state agency physicians' opinion on the severity of the claimant's spondylosis at step four, the ALJ entirely failed to consider the "cumulative effect of claimant's impairments" at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide

range of sedentary work.") [unpublished opinion].  This was important to do given the impact that a back impairment can have on obesity, diabetes, and the musculoskeletal system, and the ALJ erred in failing to consider *all* his impairments together.

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of all the claimant's impairments.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**